**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 4 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RUSSELL JONES AND SUSAN
JONES,

     Plaintiffs-Appellants,

vs.

THE KODAK MEDICAL
ASSISTANCE PLAN,

    Defendant-Appellee.

No. 97-4142

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 94-CV-256C)

---

Brian S. King (Butch L. Johnson with him on the briefs), King & Isaacson, P.C.,
Salt Lake City, Utah, for the Plaintiffs-Appellants.

Matthew M. Durham (John A. Anderson with him on the briefs), VanCott,
Bagley, Cornwall, & McCarthy, Salt Lake City, Utah, for the Defendant-Appellee.

---

Before **BALDOCK**, **KELLY**, and **MURPHY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

    Plaintiffs-Appellants Russell Jones and Susan Jones appeal from entry of

summary judgment for Defendant-Appellee Kodak Medical Assistance Plan

("KMED" or "Plan") on claims to recover health benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. The Joneses contend that the district court (1) should have reviewed KMED's decision to deny benefits for substance abuse treatment with less deference because of the Plan Administrator's alleged conflict of interest; (2) erred in concluding that the criteria upon which the Plan Administrator based his decision were part of the Plan and thus could not be reviewed; (3) should have held that the Plan Administrator acted arbitrarily and capriciously. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

Plaintiff-Appellant Russell Jones worked for Eastman Kodak and was a participant in the KMED Plan. His wife, Susan Jones – at all relevant times a beneficiary of the Plan – had an alcohol abuse problem for which she sought treatment. Under the Plan, treatment for mental health and substance abuse problems are subject to pre-certification requirements, and the Plan Summary explicitly states that failure to obtain pre-certification may result in the reduction or denial of benefits. See Aplt. App. at 306, 308-310. According to the Plan Summary, American PsychManagement ("APM") administers the managed care review process under which the medical appropriateness of substance abuse treatment is assessed. See Aplt. App. at 308. KMED informs Plan participants

- 2 -

that it "does not cover expenses for services and items that are considered medically unnecessary, experimental, or investigational." Aplt. App. at 310.

The Plan Administrator has "full discretionary authority in all matters related to the discharge of his responsibilities . . . including, without limitation, his construction of the terms of the Plan and his determination of eligibility for Coverage and Benefits." Aplt. App. at 297A. The Plan Administrator is an Eastman Kodak employee, and the Plan is entirely self-funded, which means that Eastman Kodak employees do not contribute toward the premiums. Rather, payment for covered medical care comes out of company revenues. See Aplt. App. at 269, 272, 300.

On March 30, 1993, Sierra Tucson Hospital in Arizona contacted APM to obtain pre-certification for inpatient alcohol treatment of Mrs. Jones. APM denied pre-certification the same day on the grounds that (1) inpatient care was not medically necessary and (2) it would be too difficult for Mrs. Jones' family to participate in an out-of-state-program. APM determines the medical appropriateness of inpatient substance abuse treatment according to six criteria, three of which the patient must meet. Of the three criteria, one must be a history of either "structured outpatient rehab with less than one year sobriety/abstinence following completion of the outpatient program" or "two hospitalizations for detox with failure to follow up with structured outpatient rehab." Aplt. App. at

335. Mrs. Jones did not meet these requirements.

After APM denied pre-certification for the Sierra Tucson program, Mrs. Jones suffered an alcoholic episode in which she contemplated suicide and, consequently, was admitted for a short stay at Charter Canyon Hospital in Utah, the state in which the Joneses resided. APM pre-certified this course of action. Dissatisfied with Charter Canyon, however, Mr. Jones notified APM on April 1, 1993, that he planned to take Mrs. Jones to Sierra Tucson. Mrs. Jones received inpatient treatment at Sierra Tucson from April 1 to May 1, 1993. Based on APM's refusal to pre-certify the Sierra Tucson program, the Plan declined to cover these services.

The Joneses pursued their claim through all levels of appeal available under the Plan. During this process, the Plan Administrator sent relevant medical information about Mrs. Jones to an independent reviewer, Dr. Richard B. Freeman, who concluded: "[T]he patient did not meet APM's admission criteria. Therefore the case manager acted appropriately according to APM's guidelines." Aplt. App. at 378. However, Dr. Freeman also opined that "the APM criteria are too rigid and do not allow for individualization of case management." Aplt. App. at 379. The Plan Administrator nevertheless denied the Joneses' claim, and they filed suit in federal district court.

On June 10, 1996, the district court granted KMED's motion for summary

judgment on the grounds that (1) the Plan Administrator's decision was neither arbitrary nor capricious and (2) KMED's failure to include the APM criteria in its Plan documents did not violate the disclosure requirements of ERISA. The Joneses were allowed to amend their complaint to allege that the APM criteria themselves were arbitrary and capricious. But the court subsequently granted KMED's second motion for summary judgment because it found that the APM criteria constituted part of the Plan and thus lay outside the scope of judicial review. This appeal followed.

## Discussion

We consider the district court's conclusions of law de novo when reviewing a grant of summary judgment. See Averhart v. U.S. West Management Pension Plan, 46 F.3d 1480, 1484 (10th Cir. 1994). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). After reviewing the record, we conclude that there were no material facts in dispute in this case.

Because the Plan Administrator had full discretion to determine eligibility for benefits, the district court properly reviewed the decision to deny Mrs. Jones

coverage for the Sierra Tucson program under the arbitrary and capricious standard. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989).

## A. Conflict of Interest

The Joneses contend that the Plan Administrator acted under a conflict of interest and that, consequently, the court should have given less deference to his ruling. In support of their position, they cite Chambers v. Family Health Plan Corp., 100 F.3d 818, 825 (10th Cir. 1996), in which we noted that "all of the circuit courts agree that a conflict of interest triggers a less deferential standard of review." However, rather than viewing a conflict of interest as presumptive evidence that the plan administrator's decision was arbitrary and capricious, the Tenth Circuit has adopted a sliding scale, decreasing the level of deference in proportion to the severity of the conflict. See id. at 826. The conflict is treated as *one* factor in determining whether an abuse of discretion occurred. See id.

Before applying the sliding scale, a court first must decide whether there was a conflict of interest. See, e.g., Chojnacki v. Georgia-Pacific Corp., 108 F.3d 810, 815 (7th Cir. 1997). In the Joneses' case, the Plan specifically provided that its participants "[had] a right to expect 'fiduciaries' – the persons who are responsible for the administration of each plan – to act solely in the interest of participants and their beneficiaries." Aplt. App. at 330. The Plan Administrator was an Eastman Kodak employee, and it is reasonable to assume that the

employer was conscious of health costs.

However, we decline to hold that a per se conflict of interest exists simply because the fiduciary works for the company funding the plan. See Chojnacki,108 F.3d at 815; Hickey v. Digital Equip. Corp., 43 F.3d 941, 946 (4th Cir. 1994). But see, e.g., Peruzzi v. Summa Med. Plan, 137 F.3d 431, 433 (6th Cir. 1998) (conflict of interest inherent in self-funded plans). In determining whether a conflict of interest existed, the court should consider several factors, including – by way of example only – whether: (1) the plan is self-funded; (2) the company funding the plan appointed and compensated the plan administrator; (3) the plan administrator's performance reviews or level of compensation were linked to the denial of benefits; and (4) the provision of benefits had a significant economic impact on the company administering the plan. If the court concludes that the plan administrator's dual role jeopardized his impartiality, his discretionary decisions must be viewed with less deference. See Charter Canyon Treatment Ctr. v. Pool Co., 153 F.3d 1132, 1135 (10th Cir. 1998); McGraw v. Prudential Ins. Co. of America, 137 F.3d 1253, 1259 (10th Cir. 1998).

When considering KMED's second motion for summary judgment, the district court should have inquired whether a conflict of interest existed before stating that the alleged conflict represented a factor in its analysis. However, this error was harmless because Mrs. Jones failed to satisfy the criteria for the pre-

certification of the Sierra Tucson program.  Moreover, she has not presented any evidence for us to conclude, on appeal, that a conflict of interest existed.

B.  Reviewability of APM Criteria

In granting KMED's second motion for summary judgment, the district court found that the unpublished APM criteria were part of the Plan's terms and, hence, that it could not review them.  We agree.

A plan participant has right to know where she stands with respect to her benefits.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 118 (1989); Blair v. Metropolitan Life Ins. Co., 974 F.2d 1219, 1221 (10th Cir. 1992). However, ERISA's disclosure provisions do not require that the plan summary contain particularized criteria for determining the medical necessity of treatment for individual illnesses.   See Stahl v. Tony's Bldg. Materials, Inc., 875 F.2d 1404, 1407 (9th Cir. 1989); Pompano v. Michael Schiavone & Sons, Inc., 680 F.2d 911, 914 (2nd Cir. 1982).  Indeed, such a requirement would frustrate the purpose of a summary – to offer a layperson concise information that she can read and digest.  See Stahl, 875 F.2d at 1409.  In the instant case, the Plan Summary expressly authorized APM to determine eligibility for substance abuse treatment according to its own criteria.  The APM criteria did not need to be listed in Plan documents to constitute part of the Plan.

Because we consider the APM criteria a matter of Plan design and

structure, rather than implementation, we agree that a court cannot review them. See Averhart v. U.S. West Management Pension Plan, 46 F.3d 1480, 1488 (10th Cir. 1994); see also Hein v. Federal Deposit Ins. Corp., 88 F.3d 210, 215 (3d Cir. 1996) (court must enforce plan "as written" unless it violates a specific ERISA provision). "ERISA does not mandate that employers provide any particular benefits." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91 (1983). Indeed, an employer may draft a benefits plan any way it wishes; it does not act as a fiduciary when it sets the terms of the plan. See Averhart, 46 F.3d at 1488. We hold that the district court properly granted summary judgment for KMED on the issue of whether the APM criteria were arbitrary and capricious.

## C. Plan Administrator's Decision

The Joneses challenge the district court's determination that the Plan Administrator did not act arbitrarily and capriciously. Under the relevant standard of review, a court may not overturn a plan administrator's decision if it was reasonable, given the terms of the plan, and made in good faith. See Siemon v. AT&T Corp., 117 F.3d 1173, 1177 (10th Cir. 1997); Averhart, 46 F.3d at 1484. Even considering the alleged conflict of interest, ruling that inpatient care at Sierra Tucson was medically unnecessary and geographically inappropriate does not appear unreasonable. An impartial reviewer, Dr. Freeman, agreed with the Plan Administrator that Mrs. Jones "clearly [did] not meet the established

American Psychmanagement criteria for admission to an inpatient rehabilitation service." See Aplt. App. at 379. Because the APM criteria were part of the language of the Plan shielded from judicial review, and because Mrs. Jones presented no evidence that the criteria were applied in a discriminatory manner in her case, the Plan Administrator's reliance on them was neither arbitrary nor capricious. See Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 126 (4th Cir. 1994) (noting, inter alia, that administrator's interpretation must be "consistent with the goals of the plan" and "applied consistently").

The judgment of the district court is AFFIRMED.